**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clifford Jolly, | No. CV-19-08088-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| County of Mohave, et al., | |
| Defendants. | |

At issue are Defendants City of Kingman, City of Kingman Police Department, Mosby, and Gilbert's Motion to Dismiss (Doc. 10), to which Plaintiff Clifford Jolly filed a Response (Doc. 16); and Plaintiff's Motion for Leave to File and Serve Amended Complaint Re Defendant City of Kingman (Doc. 18), to which Defendant City of Kingman filed a Response (Doc. 23) and Plaintiff filed a Reply (Doc. 30). The Court finds these matters appropriate for resolution without oral argument. LRCiv 7.2(f). For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion and grant Plaintiff's Motion.

This case centers on criminal charges brought by Mohave County against Plaintiff, which a state court judge later dismissed. Plaintiff was a court-appointed representative of his mother's estate. Mr. William Kellogg is the estranged husband of Plaintiff's mother, and Defendant Danial Oehler is his attorney. Plaintiff alleges Mr. Oehler intentionally gave misleading information to City of Kingman police detectives about assets Plaintiff arranged to place in storage units on behalf of his mother and Mr. Kellogg, which information led

to a criminal investigation of Plaintiff. According to the proposed First Amended Complaint (Doc. 18-1, Proposed First Am. Compl. ("PFAC")), the police detectives worked in concert with the county prosecutor to obtain felony charges against Plaintiff using false and misleading information, and the City's "actions were undertaken for the purpose of depriving [Plaintiff] of his liberty without probable cause, by obtaining criminal felony convictions and the resulting incarceration of [Plaintiff], in violation of his Fourth Amendment rights." (PFAC ¶ 38.) Plaintiff also alleges that the City "had implemented official policies or established customs that inflicted a Constitutional injury on [Plaintiff]." (PFAC ¶ 44.) Plaintiff maintains that he can state claims against the City for malicious prosecution and abuse of process under 42 U.S.C. § 1983 (Count I) as well as Arizona common law malicious prosecution (Count II) and abuse of process (Count III), and the Court now evaluates Plaintiff's proposed claims against the City.[1]

## I. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12

A complaint must include "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). A dismissal under Rule12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[1] In a separate Order, the Court concluded that Plaintiff stated a common law claim of malicious prosecution against the Mr. Oehler and his wife in the Proposed First Amended Complaint. (Doc. 31.)

- 2 -

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B. Fed. R. Civ. P. 15

A party may amend a pleading once as a matter of course within 21 days after serving it, or within 21 days of service of, among others, a Rule 12(b)(6) motion. Fed. R. Civ. P. 15(a). In all other circumstances, absent the opposing party's written consent, a party must seek leave to amend from the court. Fed. R. Civ. P. 15(a)(2). Although the decision whether to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15–to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotation marks omitted).

However, the policy in favor of allowing amendments is subject to limitations. After a defendant files a responsive pleading, leave to amend is not appropriate if the "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (citation and internal quotation marks omitted). "A district court does not err in denying leave to amend . . . where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). Such futility can, by itself, justify denial of a motion for leave to amend. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003).

## II. ANALYSIS

In his Response (Doc. 16) to Defendants' Motion to Dismiss, Plaintiff conceded that he is unable to state any claims against Defendants City of Kingman Police Department, Mosby, or Gilbert, and also agreed to drop Counts Two, Five and Seven of the Complaint.

(Doc. 16 at 1–2.) Plaintiff maintained, however, that he could state claims against the City for malicious prosecution and abuse of process under 42 U.S.C. § 1983 (Count I) as well as Arizona common law malicious prosecution (Count II) and abuse of process (Count III), and Plaintiff filed a Motion to Amend (Doc.18) to request leave to add allegations supporting those claims. The Court now evaluates Plaintiff's claims against the City in the proposed First Amended Complaint.

Under Rule 15, the City does not argue that Plaintiff's proposed First Amended Complaint will prejudice it, is sought in bad faith, or will create undue delay. (*See* Doc. 23.) Instead, the City contends that Plaintiff's proposed amendment is futile because Plaintiff fails to allege enough facts to state any claim. (Doc. 23 at 1–11.)

**A. Section 1983 and Common Law Malicious Prosecution (Counts I and II)**

"A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of his 'rights, privileges, or immunities secured by the Constitution and [federal] laws' by a person or entity, including a municipality, acting under color of state law." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Monell v. Dep't of Social Servs.*, 468 U.S. 658, 690–95 (1978)). To prevail on a § 1983 malicious prosecution claim, a plaintiff must prove the state law elements of the claim, *see Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987), which under Arizona law include: "(1) the institution of a proceeding, (2) actuated by malice, (3) without probable cause by the defendant in this action, (4) which terminated in plaintiff's favor, (5) and caused him damages." *Carroll v. Kalar*, 545 P.2d 411, 412 (Ariz. 1976). "Whether the facts in a particular case are sufficient to constitute probable cause is a question of law to be determined by the reasonable man test," and "the failure to establish a lack of probable cause is a complete defense to an action for malicious prosecution." *Id.*

In *Monell*, the Supreme Court held that a municipality is not liable for § 1983 claims under a theory of *respondeat superior*. 436 U.S. at 694. Instead, a plaintiff must show that the municipality has adopted an "official policy" or "custom" that caused the alleged constitutional violation, "whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy." *Id.* "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (quoting *Monell*, 436 U.S. at 694). A *Monell* claim for municipal liability can be based on (1) a municipality's official written policies, *id.* at 480, (2) a "widespread practice that, although not authorized by written law or express municipal policy is so permanent and well settled as to constitute a custom or usage with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks and citations omitted), or (3) decisions by a person with "final policy-making authority," *id.* at 123.

The City first argues that Plaintiff has not adequately pled the violation of a constitutional right, as required to sustain any § 1983 claim. (Doc. 23 at 5.) While it is true that "no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), Plaintiff specifically alleges that the City took actions against him for the purpose of depriving him of his liberty rights under the Fourth Amendment, (PFAC ¶ 38). Plaintiff has thus adequately alleged deprivation of a constitutional right in support of his § 1983 claim. *See Awabdy*, 368 F.3d at 1069.

As for the elements of a malicious prosecution claim, the Court finds no merit to the City's argument that Plaintiff has inadequately alleged the City's institution of a proceeding against Plaintiff that ultimately resulted in Plaintiff's favor. Plaintiff alleges that the City's police detectives brought incomplete and misleading information to the Mohave County Attorney's Office and worked in concert with the prosecutor to mislead a grand jury on both facts and law and obtain baseless felony criminal charges against Plaintiff. (PFAC ¶¶ 19–23.) Plaintiff also alleges that a state court judge later dismissed the criminal charges, finding that "the grand jury had been misled and that there was no foundation for the charges against [Plaintiff], and that the charges were improperly obtained." (PFAC ¶ 26.)

While it was the county prosecutor, not the City's police detectives, who obtained the criminal charges against Plaintiff, "[m]alicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Awabdy*, 368 F.3d at 1066 (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002)); *see also Beck v. City of Upland*, 527 F.3d 853, 862–63 (9th Cir. 2008) (stating that the presumption of a prosecutor's independent judgment can be rebutted, including with evidence that the prosecutor was pressured by police or given false information). As for finality, even if the state court's dismissal of criminal charges against Plaintiff was "without prejudice" under Arizona law, Plaintiff's allegations that the state court judge found that the charges against him had "no foundation" and were "improperly obtained" are sufficient to imply Plaintiff's innocence and show that the prosecution ended in his favor. (*See* PFAC ¶ 26.)

The Court also finds that Plaintiff has adequately alleged facts from which the Court could plausibly infer that the City employees' conduct was actuated by malice. Plaintiff alleges that the City's police detectives worked together with Mr. Oehler—the attorney for the estranged husband of Plaintiff's mother—act contrary to Plaintiff's interests with the intent of embarrassing, humiliating, and harming Plaintiff even though they knew or should reasonably have known that Plaintiff was a court-appointed representative of his mother's estate. (PFAC ¶¶ 11, 17, 18, 46.) Plaintiff also alleges the City's police detectives consciously disregarded Plaintiff's constitutional rights and intentionally caused Plaintiff emotional distress. (PFAC ¶¶ 24, 41.) These allegations are sufficient for the Court to infer a malicious motive.

The City also argues that Plaintiff does not allege sufficient facts from which the Court could find that the proceedings against Plaintiff went forward without probable cause (Doc. 23 at 8–9), and the Court again disagrees. To determine whether facts may lead the Court to conclude that a defendant lacked probable cause—a question of law—the Court asks: "Upon the appearances presented to the defendant, would a reasonably prudent man have instituted or continued the proceeding?" *Gonzales v. City of Phoenix*,

52 P.3d 184, 187 (Ariz. 2002); *Bird v. Rothman*, 627 P.2d 1097, 1100–01 (Ariz. Ct. App. 1981). Facts going to the extent of research and investigation the defendant conducted before initiating prosecution of the plaintiff are probative in the probable cause determination. *Bird*, 627 P.2d at 1101. Here, Plaintiff alleges that the police detectives took concerted steps with the prosecutor to obtain indictments against him without investigating "the nature of [Plaintiff's] official capacity and duties [and] the history and background of [Plaintiff's] activities in his capacity as personal representative of the Estate." (PFAC ¶ 22.) If these and other allegations prove to be true, the Court would find that the City's police detectives, working in concert with the prosecutor, lacked probable cause in initiating a prosecution of Plaintiff.

The elements of a malicious prosecution claim notwithstanding, the City also contends that Plaintiff has failed to adequately allege a *Monell* claim, and in particular that a policy or custom of the City was the moving force behind the alleged constitutional violation. (Doc. 23 at 11.) To state a policy-or-custom claim, Plaintiff must allege that the City's policy or custom was the moving force behind the alleged violation of his constitutional rights and a result of "deliberate indifference" by officials. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1060 (9th Cir. 2016); *see also Pembaur*, 475 U.S. at 479–84. Plaintiff alleges that the City's police detectives "made a deliberate choice to engage in conduct that violated [Plaintiff's] civil rights, and their conduct is evidence that the [City] had implemented official policies or established customs that inflicted a Constitutional injury on [Plaintiff], resulting in municipal liability." (PFAC ¶ 44.) At a later stage, these allegations will not suffice to prove the existence of an official policy or custom. Plaintiff will have to present evidence of a pattern of incidents like the one alleged in his Complaint. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*"). But at this stage, Plaintiff's proposed First Amended Complaint plausibly alleges the existence of a municipal custom of working with prosecutors to obtain criminal charges with false or misleading information and without probable cause.

To the extent the City argued in its Motion to Dismiss (Doc. 10 at 9–11) that Plaintiff's Notice of Claim and filing of the Complaint in this action were untimely, the Court disagrees. Plaintiff's claims accrued when the criminal proceedings against him terminated in his favor, *see, e.g.*, *Moran v. Klatzke*, 682 P.2d 1156, 1157 (Ariz. Ct. App. 1984), which Plaintiff alleges was May 2018.

Because Plaintiff has alleged sufficient facts to state a § 1983 claim for malicious prosecution against the City (Count I), he has also stated an Arizona common law claim for malicious prosecution (Count II), which elements form a part of the § 1983 claim. The Court will therefore permit Plaintiff to amend the Complaint to add the proposed allegations in support of his malicious prosecution claims in Counts I and II against the City.

### B. Section 1983 and Common Law Abuse of Process (Counts I and III)

Plaintiff also raises abuse of process claims under both § 1983—based on a violation of his Fourth Amendment rights—and Arizona common law. The City argues that Plaintiff's allegations in the proposed First Amended Complaint are insufficient to show that it abused a judicial process. (Doc. 10 at 13–14; Doc. 23 at 9–10).

Under Arizona law, "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." *Fappani v. Bratton*, 407 P.3d 78, 81 (Ariz. Ct. App. 2017) (quoting *Nientstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982); Restatement (Second) of Torts § 682 (1977)). The elements of an abuse of process claim are "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Id.* (quoting *Nienstedt*, 651 P.2d at 881).

Here, Plaintiff alleges the City's police detectives worked in concert with the county prosecutor "to mislead a grand jury on the facts and the applicable law to obtain indictments to support the baseless charges against [Plaintiff]" and "use the criminal process for improper purposes in the context of a civil dispute." (PFAC ¶ 22.) This case differs from

*Fappani*, cited by the City. In that case, the plaintiff sued the defendant for convincing the sheriff to issue citations against the plaintiff and convincing the county attorney to prosecute, and a state court judge ultimately dismissed the charges against the plaintiff. 407 P.3d at 80–81. The plaintiff neither alleged nor produced evidence that the defendant had worked in concert with the sheriff or county attorney to provide misleading or false information to a court or otherwise abuse a judicial process. *Id.* at 81–82. Here, by contrast, Plaintiff explicitly alleges that judicial processes were abused by providing false, misleading and incomplete information to a grand jury and using baseless criminal charges to interfere with an ongoing probate matter. Plaintiff's allegations are thus sufficient to state a claim for state law abuse of process claim. Because Plaintiff has also satisfied the other elements of a § 1983 *Monell* claim, as discussed above, the Court will permit Plaintiff to amend the Complaint to add the proposed allegations in support of his abuse of process claims in Counts I and III against the City.

### C. Motion to Dismiss

Plaintiff agreed to drop the claims against Defendants City of Kingman Police Department, Mosby, and Gilbert, and Counts Two, Five and Seven of the original Complaint. (Doc. 16 at 1–2.) Defendants' Motion to Dismiss is thus granted with respect to those claims but denied as to the remaining claims against the City.

## III. CONCLUSIONS

Taking the Court's conclusions in this Order in conjunction with those in the Court's prior Order (Doc. 31) addressing Plaintiff's claims against the Oehler Defendants, Plaintiff shall amend the proposed First Amended Complaint (Doc. 18-1) to bring Count Three against only the City of Kingman instead of "All Defendants" (Doc. 18-1 at 8). Plaintiff may make no further amendments to the First Amended Complaint without either the agreement of Defendants or leave of Court. Plaintiff shall file the First Amended Complaint, modified only as indicated here, on the docket by August 7, 2019.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion to Dismiss (Doc. 10). Plaintiff has agreed to drop his claims against Defendants

City of Kingman Police Department, Mosby, and Gilbert, and Counts Two, Five and Seven of the original Complaint. (Doc. 16 at 1–2.) Defendants' Motion to Dismiss is thus granted with respect to those claims but denied as to the remaining claims against the City.

**IT IS FURTHER ORDERED** granting Plaintiff's Motion for Leave to File and Serve Amended Complaint Re Defendant City of Kingman (Doc. 18).

**IT IS FURTHER ORDERED** that, by August 7, 2019, Plaintiff shall file the First Amended Complaint on the docket after amending it to bring Count Three against only the City of Kingman. (*See also* Doc. 31.) Defendants shall answer the First Amended Complaint within the time limits set forth in Fed. R. Civ. P. 12.

Dated this 1st day of August, 2019.

Honorable John J. Tuchi
United States District Judge